**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

CHRISTINE PERSAUD,

U.S. Bankruptcy Court
Case No: 10-44815-ess

                Debtor.

-------------------------------------------------------------x

In Re:

Hon. Dora Irizarry

ABRAHAM KLEIN,

U.S.D.C. Case No. 11-cv-6391

                Plaintiff,

-------------------------------------------------------------x

In Re:

CARING HOME CARE AGENCY,

U.S.D.C. Case No. 11-cv-6392

                Plaintiff,

-------------------------------------------------------------x

In Re:

JOEL KLEIN,

U.S.D.C. Case No. 11-cv-6393

                Plaintiff,

-------------------------------------------------------------x

In Re:

MELQUISIDEC ESCOBAR,

U.S.D.C. Case No. 11-cv-6394

                Plaintiff,

-------------------------------------------------------------x

In Re:

PHILIP GOTTEHRER,

U.S.D.C. Case No. 11-cv-6395

                Plaintiff,

-------------------------------------------------------------x

# <u>APPELLANTS BRIEF</u>

**MENDEL ZILBERBERG & ASSOCIATES, P.C.**
*Attorneys for Appellants Abraham Klein, Joel Klein, Caring Home Care Agency,*
*Melquisidec Escobar, and Philip Gottehrer*

6619 Thirteenth Avenue
Brooklyn, New York 11219
Telephone (718) 256-2000

<u>Oral Arguments Requested</u>
10 Minutes Oral Argument
5 Minutes Reply

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................ 3,4

Statement on Jurisdiction. ............................................................. 5-7

Issues Presented ........................................................................... 8

Preliminary Statement .................................................................. 9-10

Statement of Facts ........................................................................ 10-25

Argument

    I.     THE BANKRUPTCY COURT LACKED SUBJECT MATTER JURISDICTION TO ENTERTAIN, LET ALONE GRANT, THE CHAPTER 7 TRUSTEE'S REQUESTS FOR BANKRUPTCY RULE 2004 DISCOVERY AS IT RELATED TO NON-ESTATE PROPERTY....    25

    II.    THE BANKRUPTCY COURT IMPROPERLY GRANTED THE CHAPTER 7 TRUSTEE'S APPLICATIONS FOR BANKRUPTCY RULE 2004 DISCOVERY RELATING TO CARING, DESPITE THE CLEAR LANGUAGE OF THE AWARD, AND DESPITE THE FACT THAT THE DEBTORS OWN COUNSEL UNDERSTOOD THAT THE ARBITRATION AWARD GRANTED CREDITOR KLEIN 100% AND TOTAL OWNERSHIP OF CARING.....................................................    28

    III.   THE BANKRUPTCY COURT ERRED IN OVERLOOKING THE JUDICIAL ADMISSIONS OF DEBTOR PERSAUD'S COUNSEL THAT CARING BELONGS TO CREDITOR KLEIN.............................    31

    IV.   THE BANKRUPTCY COURT ERRED BY FAILING TO RECOGNIZE THE BINDING EFFECT OF THE ARBITRATION AWARD EVEN IF THE AWARD IS CURRENTLY UNCONFIRMED AND *A FORTIORI* IF THE ARBITRATION AWARD IS CURRENTLY A CONFIRMED AWARD............................................................................    32

Conclusion ...................................................................................    35

## TABLE OF AUTHORITIES

**CASES:**

Acevedo v. Holton
239 A.D.2d 194, 195, 657 N.Y.S.2d 407, 409 (1st Dep't 1997)   ...................................   33

Arbaugh v. Y & H Corp,
546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)   ...................................   6

Bercy v. Am. Airlines, Inc.
2011 WL 2490716 (E.D.N.Y. June 22, 2011)   ...................................   6

Cohen v. Beneficial Indus. Loan Corp.
337 U.S. 541, 546-547 (1949)   ...................................   6

Concord Boat Corp. v. Brunswick Corp.,
169 F.R.D. 44 (S.D.N.Y 1996)   ...................................   27

County of Rockland v. Aetna Casualty & Surety Co.
129 A.D.2d 606, 514 N.Y.S.2d 102, 103 (2d Dep't 1987)   ...................................   33

D&L Holdings, LLC v. RCG Goldman Co.,
287 A.D.2d 65, 72, 734 N.Y.S.2d 25, 31 (1st Dep't 2001)   ...................................   32

Ecker v. Lerner
123 A.D.2d 661, 507 N.Y.S.2d 31 (2d Dep't 1986)   ...................................   33

Hibbert v. Avwontom
35 A.D.3d 813, 814, 826 N.Y.S.2d 441, 442 (2d Dep't 2006)   ...................................   33

Hilowitz v. Hilowitz
85 A.D.2d 621, 444 N.Y.S.2d 948, 949 (2d Dep't 1981)   ...................................   33

In re Coffee Cupboard, Inc.
128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991)   ...................................   26

In re Delafied 246 Corp.,
05-13634ALG, 2007 WL 2332527 (Bankr. S.D.N.Y. Aug. 14, 2007)...........................   31

In re Eagle–Picher Indus ., Inc.,
169 B.R. 130 (Bankr. S.D.Ohio 1994)   ...................................   28

In re Gibson & Cushman Dredging Corp.,
101 B.R. 405, 407 (E.D.N.Y. 1989   ...................................   6

In re Hilsen
2008 WL 2945996 (Bankr. S.D.N.Y. 2008)   ...................................   26

*In re* Leibinger-Roberts, Inc.,
92 B.R. 570 (E.D.N.Y. 1988).                                  ................................. 6

*In re* Lev,
2008 WL 207523 (Bankr. D.N.J. Jan. 23, 2008)                ................................. 27

*In re* Monahan Ford Corp. of Flushing
390 B.R. 493 (Bankr. E.D.N.Y 2008)                          ................................. 31

Jacobson v. Fireman's Fund Insurance Company
111 F.3d 261 (2d Cir. 1997),                                ................................. 33

Kilduff v. Donna Oil Corp.
74 A.D.2d 562, 424 N.Y.S.2d 282(2d Dep't 1980)              ................................. 33

Manway Constr. Co. v. Horn. Auth. of Hartford
711 F.2d 501, 503 (2d Cir. 1983)                            ................................. 5

Maurizio v. Goldsmith,
84 F. Supp. 2d 455, 464 (S.D.N.Y.), aff'd, 230 F.3d 518 (2d Cir. 2000)....................... 31

McMenemy v. Goord
273 A.D.2d 665, 667, 709 N.Y.S.2d 683, 685 (3d Dep't 2000)  ................................. 33

McCluskey v. New York State Unified Court Sys.
2010 WL 2558624 (E.D.N.Y. June 17, 2010) aff'd, 442 F. App'x 586 (2d Cir. 2011)... 5

Migra v. Warren City School Dist. Bd. of Educ.
465 U.S. 75, 104 S.Ct. 892, 896 (1984)                     ................................. 34

United Food & Commercial Workers Union, Local 919, AFL-CIO v. Center Mark Prop.
Meriden Square, Inc. 30 F.3d 298, 301 (2d Cir. 1994)        ................................. 5

Ward v. Brown
22 F.3d 516, 519 (2d Cir. 1994)                            ................................. 6

Wheeler v. Citizens Telecommunications Co.,
795 N.Y.S.2d 370, 372 (3d Dep't 2005)                      ................................. 31

White v. State
615 N.Y.S.2d 811, 814-815, 161 Misc.2d 938, 942-943 (N.Y.Ct.Cl. 1994)................. 33

**STATUTES:**
28 U.S.C. § 158(a).                                         ................................. 6; 7

28 U.S.C. § 1334(e)(1)                                      ................................. 24; 25

28 U.S.C. § 1447(c)                                         ................................. 6

Fed. R. Bankr. P. 2004                                      ................................. 25-26

4

## STATEMENT ON JURISDICTION

This appeal concerns five Amended Orders dated November 10, 2011, issued by the Bankruptcy Court for the Eastern District of New York (Hon. Stong, J.), which granted the Chapter 7 Trustee's (hereafter referred to as "Trustee") applications for Bankruptcy Rule 2004 discovery regarding Caring Home Care Agency (hereinafter referred to as "Caring"). Section 1334(e)(1) of the U.S. Code limits the Bankruptcy Court's jurisdiction to "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1).

The Appellants (Caring, Creditor Abraham Klein (hereinafter referred to as "Creditor Klein"), Melquisedec Escobar, Joel Klein and Phillip Gottehrer (collectively referred to herein as the "Appellants")) maintain that, in light of Creditor Klein's *prima facie* showing demonstrating that Caring is not property of the estate, the Bankruptcy Court lacked subject matter jurisdiction to entertain – let alone grant – the Trustee's applications without making a determination that Caring is property of the estate.

Therefore, the Amended Orders of November 10, 2011 are appealable as of right, as repeatedly set forth by the Second Circuit that, "any party or the court *sua sponte,* at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." United Food & Commercial Workers Union, Local 919, AFL-CIO v. Center Mark Prop. Meriden Square, Inc., 30 F.3d 298, at 301 (2d Cir. 1994) (quoting Manway Constr. Co. v. Horn. Auth. of Hartford, 711 F.2d 501 (2d Cir. 1983); see also, McCluskey v. New York State Unified Court Sys., 2010 WL 2558624 (E.D.N.Y. June 17, 2010) aff'd, 442 F. App'x 586 (2d Cir. 2011).

Subject matter jurisdiction cannot be waived, and can be examined by the Court at any point in the litigation, including on appeal of a judgment on the merits, by a party to the action or

5

*sua sponte.* See, Arbaugh v. Y & H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Ward v. Brown, 22 F.3d 516 (2d Cir. 1994). If subject matter jurisdiction does not exist, the action must be dismissed, regardless of Plaintiff's failure to move to remand at an earlier junction. See, 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); see also, Bercy v. Am. Airlines, Inc., 2011 WL 2490716 (E.D.N.Y. June 22, 2011).

Additionally, the Appellants assert that the Amended Orders dated November 10, 2011 are appealable as of right pursuant to Section 158 of Title 28 of the U.S. Code, which sets forth that,

> "The district courts of the United States shall have jurisdiction to hear appeals
>
> (1) from final judgments, orders, and decrees;
>
> (2) from interlocutory orders and decrees issued under section 1121 (d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
>
> (3) with leave of the court, from other interlocutory orders and decrees;
>
> and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."

28 U.S.C. § 158(a).

Aside from the lack of subject matter jurisdiction, Creditor Klein brings this appeal because although the Amended Orders dated November 10, 2011 may not be final decisions disposing of the underlying bankruptcy case, they are a "final disposition of a claimed right, which is not an ingredient of the cause of action and does not require consideration with it," and are thus appealable as of right pursuant to 28 U.S.C. § 158(a). Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-547 (1949).

As the United States Supreme Court set forth in Cohen, *supra* at 546, there is a small class

of decisions, "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

Accordingly, the Appellants maintain that the November 10, 2011 Amended Orders being appealed from finally dispose of the Appellants' claim that the Court lacked jurisdiction to order the production of documents relating to non-estate property, and are appealable as of right insofar as said Amended Orders directed the Appellants to produce the documents requested by the Trustee, thereby precluding and rendering moot any future review of the Appellants' claim regarding the Bankruptcy Court's lack of jurisdiction to order said production. Cohen, *supra* at 546 ("When that time comes, it will be too late effectively to review the present order and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably.  We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of this case."  Ibid).

Finally, issues of finality have been applied with more flexibility in bankruptcy appeals. ("In realm of bankruptcy law, term "final order" or "judgment", for purposes of appealability, is given somewhat more expansive interpretation than in ordinary civil case; while "final order" in ordinary case is order that ends litigation and leaves nothing for court to do but execute judgment, final order in bankruptcy case is one that finally resolves particular proceeding or controversy within entire bankruptcy proceeding or order that conclusively determines separable dispute over creditor's claim or priority. 28 U.S.C.A. § 158(a)." In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 407 (E.D.N.Y. 1989)( See In re Leibinger-Roberts, Inc., 92 B.R. 570 (E.D.N.Y. 1988).

## ISSUES PRESENTED

1. Did the Bankruptcy Court exceed its jurisdiction when it granted the Trustee's applications for Bankruptcy Rule 2004 discovery, where, as a matter of law, the clear language of the Arbitration Award dated March 31, 2009, awarded the subject property of said discovery (Caring) to be solely the property of Creditor Klein, to the exclusion of the Debtor.

2. Did the Bankruptcy Court err in granting the Trustee's Rule 2004 discovery requests specifically relating to Caring, despite the plain meaning of the Arbitration Award; and despite Debtor's own counsel's understanding of the Arbitration Award granting 100% and sole ownership of Caring to Creditor Klein.

3. Did the Court err as a matter of law in overlooking the binding judicial admissions made by former and current counsel for the Debtor in State Court, both before and after the Bankruptcy filing, that the Award granted Creditor Klein the sole ownership of Caring.

4. Did the Court err as a matter of law by failing to recognize that despite the Trustee's improper and incorrect arguments, Creditor Klein, in the worst case, has an unconfirmed award, and in the best case, has a confirmed award, which in either case has preclusive effect and does not allow the Trustee to use Rule 2004 discovery to attack the Arbitration Award either directly or collaterally.

## **PRELIMINARY STATEMENT**

The Amended Orders appealed from were issued by the Bankruptcy Court after the issuance of initial Orders on October 31, 2011. Creditor Klein filed an Order to Show Cause relating to those orders seeking *inter alia* reconsideration of same.  Before a hearing was held on Creditor Klein's Motion, the Court issued the Amended Orders on November 10, 2011, which the court set forth represented the court's reconsideration.

The central theme of the Trustees 2004 discovery requests was to obtain information relating to the business operations and financial affairs of Caring.  The Court's Orders in some cases specifies the production of documents specifically relating to Caring and in some cases orders the production of documents in more generic terms.  However, even the generic terms in the Orders relate primarily to and encompass Caring.  While the Amended Orders only partially granted certain discovery sought by the Trustee pursuant to Bankruptcy Rule 2004,  it functionally ordered the Appellants to produce to the Trustee numerous documentation relating to Caring.

Creditor Klein made <u>at least</u> a *prima facie* showing that Caring was not part of the Debtor's estate at the time of the Debtor's bankruptcy filing based on the plain meaning of an Arbitration Award that was issued and confirmed more than one year before the Debtor filed for bankruptcy protection, and that said Arbitration Award – as a matter of law, even if it was not judicially confirmed – is not subject to collateral attack.  The *prima facie* showing included the clear meaning of the Arbitration Award and the fact that even the Debtors own counsel understood that the Award granted 100% and sole ownership of Caring to Creditor Klein.

The Trustee, however, has offered nothing more than an unsubstantiated and conclusory statement that the Debtor, and thus the Trustee, owns Caring.

Accordingly, the Bankruptcy Court erred in ordering said document production as it lacked

subject matter jurisdiction to order Rule 2004 relief concerning non-estate property.

The Bankruptcy Court further erred in not recognizing that as a matter of law the Debtor was bound by the admissions of her own counsel set forth in their various pleadings before and after the Debtor filed for Chapter 11, wherein they stated that the Award granted 100% and sole ownership of Caring to Creditor Klein, and thus the Debtor does not have any interest in Caring.

Finally, the Bankruptcy Court erred in allowing Rule 2004 discovery of an entity – Caring – whose owner, Creditor Klein at a minimum has an unconfirmed Arbitration Award which clearly states that the Debtor does not have any residual interest in Caring.

Therefore, the Bankruptcy Court erred by granting the Trustee's Rule 2004 discovery relating to Caring, and to any other entities without any showing that the estate has any interest.

## STATEMENT OF FACTS

On May 11, 2007, after several months of negotiations during which both parties were represented by counsel, Creditor Klein and Christine Persaud (hereinafter referred to as "the Debtor" or "Debtor Persaud") entered into an Agreement (the "Agreement") regarding Caring. The Agreement set forth that in consideration of the payment of $100,000.00 by Creditor Klein to the Debtor, the Debtor granted Creditor Klein a 50% partnership in Caring, subject to the necessary governmental approvals.  The Agreement also set forth that immediately upon the execution of the Agreement, Creditor Klein had the continuing obligation to fund Caring's operation, and that the Debtor was entitled to receive on a biweekly basis 33% of Caring's profit as complete and total satisfaction of her share in said profits.  A-128—A-149. [1]

The Agreement further set forth that, "any impasse, dispute or controversy arising among the parties regarding any covenant, term or condition of the agreements, or any claim relating

---

[1] References to the Appendix are designated as A__, designating the page of the appendix.

thereto, or the breach thereof, or any decision for which the parties cannot reach agreement, should be submitted to binding arbitration in front of Marvin Neiman, Esq.," and that judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof.  A-438. During the negotiation of the Agreement, when Mr. Neiman was approached to be named Arbitrator in the Agreement, Mr. Neiman communicated that he believed that he had represented members of Creditor Klein's family in the past. A-438.  Notwithstanding said disclosure, both parties confirmed their selection of Mr. Neiman as the Arbitrator, and waived any issue of conflict, explicitly setting forth this waiver in the Agreement.  A-438.

The attorneys, due to their respective schedules and the apparent need to close the deal on short notice, by prior agreement did not attend the closing. Creditor Klein maintains that duplicate copies of the various Agreements were signed by both parties on the closing date. A-421—A-446.

For approximately the next two years, Creditor Klein and the Debtor conducted the business of Caring substantially pursuant to the terms of the Agreement.  However, due to several issues that arose between them which they were not able to resolve, on or about February 11, 2009, Creditor Klein sent a notice to the Debtor and to the Arbitrator setting forth his intent to arbitrate certain claims pursuant to the Agreement.  A-448. Between February 13, 2009 and March 18, 2009, the Arbitrator and the Debtor's counsel exchanged approximately seven letters including sending Debtor Persaud's attorney a signed copy of the Agreement, as well as communications concerning counsel's objections to the Arbitrator, based on the Arbitrator's statement in the Agreement that he had represented members of Creditor Klein's family in the past apparently ignoring the waiver that was in the same Agreement.  A-448—A-466. In fact, the Arbitrator notified the parties that he had in fact represented another Abraham Klein. A-464-465. Absent from the Debtor's counsel's communications with the Arbitrator was any mention that the

11

Agreement was never signed by the Debtor.  A-448—A-466.

The Arbitrator offered to address the Debtor's counsel's jurisdictional issues at the outset of the arbitration, scheduled for March 19, 2009, warning counsel that if the Debtor intended to default and not attend the arbitration, it would nevertheless go on as scheduled, and the Debtor proceeded at her own peril.  A-464—A-465.. Notwithstanding the Arbitrator's warning, the Debtor and her counsel did not appear at the scheduled arbitration, during which the Arbitrator heard the merits with testimony on the record and admitted into evidence thirty exhibits submitted by Creditor Klein.

On March 31, 2009, the Arbitrator issued his Award and Ruling, which set forth approximately four pages of findings of fact, and approximately three pages of conclusions, based on the exhibits and testimony submitted to him at the arbitration.  A- 390—A-398. The Arbitrator found, *inter alia*,

- "That [Creditor Klein] had entered into various agreements in accordance with he paid $100,000 to [the Debtor] for his obtaining a one half interest in Caring and in a partnership with [the Debtor]. " A-392.

- That, "pursuant to the Agreement with [the Debtor], on a temporary basis until proper financing could be obtained, [Creditor Klein] invested an additional $788,165 in capital to the Caring and Liberty enterprises." A-393

- That, "based on the Agreements between him and [the Debtor], there was an additional $1,324,702.28 due to [Creditor Klein] as of February 27, 2009." A-393

- That, "in addition, because of [the Debtor's] failure to allocate certain moneys per the Agreement, [Creditor Klein] testified and demonstrated that an additional sum of $99,388.65 is due and owing as of February 27, 2009." A-393.

- "That [the Debtor] withdrew all of her potential entitlement to any income from Caring during the period of [Creditor Klein] being an interest holder in Caring, so that all present monies in Caring including all receivables of Caring belong to [Creditor Klein] in accordance with the Agreement." A-393.

- "That [the Debtor] induced [Creditor Klein] to invest into the Liberty enterprise and agreed with [Creditor Klein] that the same terms of the Agreement in place with [the

Debtor] and Caring would be the terms of agreement between them as to the Liberty enterprise." A-393.

-        "That Liberty, at least in part, used the resources of Caring in the operation of its business." A-394.

-        "That [the Debtor] did not adhere to the terms of the Agreements between [Creditor Klein] and [the Debtor] in the Caring deal with respect to Liberty[2]." A-394.

-        "That it is impossible for the parties to work together based upon the actions of the Debtor Persaud in the days up to the arbitration." A-394.

-        "That it is appropriate to unwind the relationship of these parties in a matter that comports with the Public Health Law." A-394.

Based on said findings set forth in the Award, the Arbitrator ruled that:

 "Klein has a 50% ownership interest in both Caring and Liberty in accordance with the terms of the Agreement[2], subject to the approvals of the agencies with jurisdiction, which interest in Liberty shall cease as soon as he, or his designee, is approved by the agencies with jurisdiction **to be the sole operator of Caring**...If [Debtor Persaud] works at and for the benefit of Caring during the pendency of the  license transfer, for and at the offices of Caring, for a minimum of 30 hours per week, she will be entitled to compensation of $1,000 per week and no more for any reason until the provisions of this Award are fully complied with **_and thereafter she has no residual interest or rights in Caring_**."

A-396—A397. (emphasis added)

Thereafter, Creditor Klein brought a petition in State Court to confirm the Arbitrator's Award, and on April 2, 2009, during a preliminary application for emergency relief in which the Debtor's counsel was present, the Court scheduled a confirmation hearing for April 17, 2009.  A-400—A-799. However, the Debtor and her counsel once again failed to appear at the confirmation hearing, and the Arbitration Award was confirmed by the State Court on default.  A-804.

On April 22, 2009, the Debtor made a motion in the State Court to vacate the default judgment confirming the Award, based – for the first time – on the argument that the Debtor had never signed the underlying Agreement with Creditor Klein, submitting an affidavit from Debtor's

---

[2] The issue of the inclusion of Liberty in the Arbitration was ruled on April 7, 2010 (Klein v. Persaud, 27 Misc. 3d 1205(A) (NY 2010) and the appeal therefrom was withdrawn by the Debtor on March 7, 2011. (A-2217).

prior counsel, Samuel Rieff, Esq., to support her claim. A-806—A808 . The State Court denied the Debtor's motion, finding no reasonable excuse for the default without reaching the question of the potential merits of the claim that Debtor Persaud never signed the Agreements. A-810—A-811. The Debtor thereafter appealed said denial to the New York State Appellate Division, ultimately filing her appellate brief and record one year later, on May 3, 2010.

On April 20, 2010, Debtors former counsel, Samuel Rieff, Esq., was deposed (A-1860-A-2002) and under oath sought to invoke the Fifth Amendment as to the totality of the affidavit dated April 20, 2009. (A-1941) However, apparently Mr. Rieff came to understand that he had already waived the privilege at that juncture. In fact Mr. Rieff thereafter disclaimed and disaffirmed the contents of his affidavit.

In paragraph 7 of his affidavit Mr. Rieff affirmed that, "I have compared the proposed Agreement of May 17, 2007 with that proposed by Mr. Klein's lawyers.  This Agreement could absolutely not have been signed on May 17, 2007." A-795

At his deposition when questioned, "As to the first sentence, 'I have compared the proposed agreement without…' what, if anything, is either accurate or not accurate about that?" Mr. Rieff responded, "I never compared." A-1991; Line 2-9

Mr. Rieff was then asked, "With respect to the second part: 'This agreement could absolutely not have been signed on May 17, 2007.'  What is accurate there?" Mr. Rieff answered, "I would have no way to know that. I didn't see her sign it.  I didn't speak to her about signing it." A-1991; Line 12-18.

Additionally, when asked, "Do you believe that Paragraph No. 7 was entirely truthful?" He responded, "No." A-1996; Line 14-16.

Mr. Rieff further affirmed in paragraph 4 of his affidavit, "After reviewing this alleged

14

agreement, it is clear that it was not a document signed by my client during my representation of her." A-795

At his deposition, when asked, "Do you believe that Paragraph No. 4 was entirely truthful?" Mr. Rieff responded, "No." A-1996; Line 11-13.

Mr. Rieff further affirmed in paragraph 5 of his affidavit, "I was still negotiating terms of a proposed Agreement after May 17, 2007.  These negotiations lasted an additional several months without an Agreement being signed." A-795.

However, at his deposition Mr. Rieff stated,

> " Q.   You mentioned a moment ago that in discussing the process, you went through the process to arrive at what was sort of characterized as a final agreement?
>
> A.   Yes.
>
> Q.   Understanding that you have never seen a signed copy of that final agreement, sitting here today, do you have any reason to believe that that agreement was not executed?
>
> A.   No.  It did call for a large payment, so most people don't do that unless there's a signed agreement.
>
> Q.   And to your knowledge, was that payment made?
>
> A.   To my knowledge it was."
>
> (A-1994; Line 10-24)

While the deposition testimony was relevant to the issue of the potential likelihood of success on the merits, as arguably significant weight is given to attorney affirmations, this issue was not ruled on by the lower court, and therefore Creditor Klein did not seek leave to enlarge the record on a matter that he believed was not before the Appellate Division. A-1935—A-2005.

On May 26, 2010, during the pendency of the State Court appeal, the Debtor filed a voluntary Petition for relief under Chapter 11 of the Bankruptcy Code before the Bankruptcy Court for the Eastern District of New York.

15

As early as July 13, 2010, counsel for Creditor Klein raised the issue of the Debtor's prosecution of the State Court action, including her appeal, in light of her bankruptcy filing, setting forth that,

> "The issues with the Second Department become a little more complex and we will be asking the Court among other relief that we're going to seek insofar as the Debtor has not invoked the automatic stay in state court but has sought to advance their position both in the state Supreme and in the Appellate Division, we're in the middle of conducting our research now although there is a limited body of cases.  We will be arguing for the stay to be lifted on the basis of you can't be fighting in both places.  If you want the protection of the bankruptcy court you have to take the protection of the bankruptcy court.  You can't affirmatively be fighting.  They filed motions and orders to show cause as recently as last week."

> A-3053; ¶ 39.

Thereafter, on a Motion filed by Creditor Klein in the Bankruptcy Court on August 23, 2010, (A1—A-58), Creditor Klein once again alerted the Court to the fact that the Debtor had violated her own automatic stay by requesting (without the Court's authorization) the intervention of the State Courts on several occasions after filing for bankruptcy protection, setting forth that,

> **"Debtor Persaud violated her own automatic stay by using the State Courts after her bankruptcy filing, without even informing this Court**
>
> 121. On July 6, 2010, Debtor Persaud's appellate attorney, Stephen Preziosi, Esq., without taking leave from this Court, brought an emergency Order to Show Cause in front of the Kings County Court, to renew and reargue said Court's order of May 4, 2009 denying Debtor Persaud's motion to vacate the April 17, 2009 Default Judgment.  A copy of said application is attached hereto as Exhibit 82. (A-1694—A-1702) […]
> 123. That same day, July 6, 2010, Debtor Persaud, again without leave from this Court or without requesting an extension due to her bankruptcy filing, also brought an Order to Show Cause in front of the Appellate Division, Second Department, for an extension of Debtor Persaud's time to file her amended Appellate Brief and Appendix concerning Debtor Persaud's appeal of the Kings County Court's May 4, 2009 Order denying Debtor Persaud's motion to vacate the Default Judgment – which redaction had been ordered by the Appellate Division by its Order of June 18, 2010 (attached hereto as Exhibit 83), due to Debtor Persaud

16

improperly including certain documents therein that were not part of the appellate record. (<u>A-1704—A-1710</u>)

[…]

126. Thereafter, on or about July 12, 2010, Debtor Persaud withdrew her original application before the Appellate Division for an extension of time to file her amended Appellate Brief and Appendix, and – again without leave of this Court or without even informing same –made a new motion, this time for re-argument of the Appellate Division's Order of June 18, 2010, which had ordered Debtor Persaud to redact her Appellate Brief and Appendix.  Copies of said new application and Creditor Klein's opposition papers are attached hereto as Exhibits 85 and 86, respectively." (<u>A-1716—A-1717; A-1719—A1759</u>).

<u>A-51-- A-52.</u>

Similarly, on several occasions that Creditor Klein, and even the Debtor, filed pleadings and/or appeared in front of the State Appellate Court to defend the appeal, the parties informed said Court of the Debtor's bankruptcy filing.  However, neither Court reacted to this information.

On April 8, 2011, the Bankruptcy Court converted the case into a Chapter 7 case, and on April 21, 2011, appointed John S. Pereira, Esq. as Chapter 7 Trustee.

On May 10, 2011, the New York State Appellate Division issued its decision *inter alia* in reliance on the attorney affirmation, and reached out and ruled on the potentially meritorious defense prong, vacating the default judgment, and ordering a confirmation hearing.  <u>A-1854—A-1856</u>. Creditor was unable to obtain reargument based on the erroneous and incorrect attorney affidavit and other after discovered evidence. <u>A-1822-A-2226.</u>

On or about July 29, 2011, the Trustee's proposed counsel sent a letter to Creditor Klein's counsel, setting forth the Trustee's position that the confirmation hearing could not proceed, without first applying to the Bankruptcy Court to lift the automatic stay. <u>A3106—A3107.</u>

Based on the Trustee's proposed counsel raising the issue of the automatic stay, Creditor Klein realized that the Appellate Division ruling was arguably violative of the automatic stay.  Accordingly, on August 4, 2011 Creditor Klein filed a Motion to set aside the May 10, 2011

decision of the Appellate Division. <u>A-3042--A-3107.</u>

On or about August 24, 2011, the Trustee made five applications by Orders to Show Cause seeking the examination of and the production of certain documents from Caring, Creditor Klein and certain employees of Caring (Melquisedec Escobar, Joel Klein and Phillip Gottehrer) pursuant to Bankruptcy Rule 2004. <u>A2280—A-2365.</u> The five applications set forth that, "The Trustee, on behalf of the bankruptcy estate, **owns Caring**," and that, "the Trustee requires from Klein certain information related to, *inter alia*, the business operations and financial affairs of Caring, and the purported ownership interest in Caring asserted by Klein." <u>A-2281; A-2298; A-2315; A-2332; and A-2349.</u> (emphasis added).

On or about September 9, 2011, Creditor Klein filed an Adversary Proceeding against the Trustee (<u>Klein v. Pereira</u>, Bankr. Case No. 11-01456), currently *sub-judice*, seeking an order from the Bankruptcy Court declaring that Caring, and its successors and assigns, belong to Creditor Klein and are thus not property of the estate, and requesting that the Court deny the Trustee's applications for Rule 2004 discovery concerning Caring. <u>A-2366—A-2385.</u>

In addition, on same date, September 9, 2011, Creditor Klein brought an Order to Show Cause before the Bankruptcy Court, seeking a denial of the Trustee's application for Rule 2004 discovery concerning Caring, because Caring is not property of the estate, and the use of Rule 2004 discovery was improper. <u>A2386—A-2445.</u>  However, the Bankruptcy Court neither signed said Order to Show Cause, nor did it assign it to its calendar.

On September 13, 2011, the Bankruptcy Court held a hearing on the Trustee's applications, wherein counsel for Creditor Klein set forth that:

> "MR. LEWITTES: …I'm well aware of Mr.Pereira's interest in moving his case along and trying to do what he is supposed to do, which is to liquidate the assets rapidly. And we also are aware of the fact that it is not     uncommon; rather it is typical for trustees to request 2004

examinations…the core of the issue so far that has been and is being presented to this Court is whether or not the trustee has any interest in the property in the Care (sic) facility We have an arbitration award. I hear back and forth that it hasn't been confirmed. It's not final. But the law is very simple. First of all, under New York law and as have been examined by the Second Circuit Court of Appeals, you can have          an arbitration aware that does not have to be confirmed. And that arbitration award is subject to the duel doctrines of res judicata and collateral estoppel. So there is number one, the serious question of the arbitration award; how that can be fleshed out. And that is an issue that goes way before the 2004 in this particular case. That's one barrier…

THE COURT: Well, before you leave the first barrier, help me understand how that's an obstacle to the trustee here. I understand the point you make, but I don't yet connect them to the conclusion that there should not be some appropriately balanced and measured production of information to the trustee, whether consensually, which I would welcome, or by order of the Court if necessary.

MR. LEWITTES: The trustee, as an initial step, has to demonstrate, I presume, under the facts and circumstances present here whether or not he's delving into issues for which he has no legal or equitable right to do. And that is because based upon the arbitration award he does not have, and he does not succeed, to the property of the debtor because the debtor has no property here.

THE COURT: How should the trustee decide whether and how to proceed in the state court, where I take it there is  a – there's a matter now pending on remand from the second department, concerning specifically that arbitration order, which was entered on default? You referenced the doctrines of  res judicata, collateral estoppel and the like, and today is not the day, not may this even be the court, to determine whether that default has consequence, whether the default should be reopened. I think that may well be an issue for another court in another day. But –

MR. LEWITTES: Well –

THE COURT: -- I'm wondering how a trustee in a  Chapter 7 case, mindful of the breadth, and I have the authority before and it's legion, for the breadth and the practical approach which the courts and trustees are guided to take in 2004. How can -- why isn't this an appropriate step for the trustee to do? And if there's no interest there, I would not be surprised to see any trustee say I'm done…

MR. LEWITTES: That –

THE COURT: But can I cut that process off before it starts and do my job? I'm -- I don't see – I'm concerned. I don't see it that way.

MR. LEWITTES: I have, frankly, never seen or been involved in an issue where the property of the estate comes into question at the time of the 2004 or before that. It goes under the rubric, I suppose, of before you make the chicken soup, first cash the chicken.

THE COURT: But doesn't 2004 specifically permit inquiry into the acts, conduct or property or the liabilities and financial condition of the debtor or to any matter which may affect the administration of the debtor's estate, which may affect -- or to the debtor's right to a discharge? Well, that's probably not here. But that's a -- that's a big broom that sweeps broadly, I think.

Transcript of Hearing held on September 13, 2011; A-3158—A-3162.

The hearing on the Trustee's applications was continued several times until October 28, 2011.[3] A-2446—A-2775.

On October 31, 2011, the Bankruptcy Court entered five Orders wherein it found that,

"Whereas Bankruptcy Code Section 704(a)(4) directs the Trustee to "investigate the financial affairs of the debtor;" and

Whereas Bankruptcy Rule 2004(b) provides that "[t]he examination of an entity under this rule … may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate;" and

**Whereas, pursuant to the OSC Application, the Trustee seeks to investigate the financial affairs of the Debtor and matters which may affect the administration of the Debtor's estate**,"

A-2915—A-2939. (emphasis added).

Based on said findings, the Court ordered the Appellants to produce certain documents to the Trustee as set forth in said Orders. The October 31, 2011 Orders directed the above-referenced document production to commence on November 14, 2011. A-2915—A-2939.

---

[3] At the hearing held on September 15, 2011 the matter was adjourned; at the appearance of September 20, 2011 the matter was again adjourned; at the appearance of September 21, 2011, the matter was again adjourned; at the appearance of September 22, 2011, the matter was briefly heard, but thereafter adjourned; and once again on October 28, 2011, the matter was adjourned.

20

Notwithstanding Creditor Klein's opposition to the Trustee's application, the October 31, 2011 Orders ordered the production of documents relating to entities controlled by the Debtor herself, and entities controlled by Creditor Klein with no discernible relationship to the Debtor.

On November 9, 2011, the Appellants moved the Bankruptcy Court by Order to Show Cause to reconsider, pursuant to Bankruptcy Rule 9023, the October 31, 2011 Orders on the basis that the Bankruptcy Court lacked subject matter jurisdiction to entertain, let alone partially grant, the Trustee's applications for Rule 2004 discovery relating to Caring as Caring was not part of the estate, and staying the document production ordered therein until a determination was made that Caring is part of the estate.  A-2940—A3021.

However, before the Appellants' Motion for reconsideration was heard, on November 10, 2011, the Bankruptcy Court entered the Amended Orders being appealed from herein, wherein the Court reaffirmed its previous Orders of October 31, 2011.  At a hearing held on November 14, 2011, the Court explained that the Amended Orders were drafted in consideration of the issues raised by Creditor Klein.   (A-2845—A-2847).  The Amended Orders required the Appellants to produce to the Trustee: [4]

> From Caring: (1)  Income statements, balance sheets, and cash flows; (2) Cash  receipts journal; (3) Cash disbursements journal; (4) Sales journal; (5) Bank statements and cancelled checks for all bank accounts in the name of Caring or any of its similarly named affiliates; (6) General ledger detail; (7) Accounts receivable aging reports; (8) Accounts payable aging reports; (9)  Year-end payroll summaries; (10) Federal and State income tax returns; (11)  Listing of loans receivable and payable; and (12) Copies of all contracts or agreements detailing ownership of Caring, limited to  agreements  between  (i)  the  Debtor  or any corporation, partnership, joint venture, or other entity directly or indirectly owned by or affiliated with the Debtor, and (ii) Caring;
>
> A-3038—A3041.

---

[4] For the Court's convenience, we present redlined versions showing the revisions between the October 31, 2011 Orders and the November 20, 2011 Amended Orders.

~~1.~~      From  Creditor  Klein:   (1) Documents related to any loans or business arrangements between (i) Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor; (2) Correspondence between (i) Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor; and (3) Books or records of any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with both (i)~~Klein, and the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor.   Contracts, documents or agreements related to any loans or business arrangements between~~ Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor.

A-3030—A3033.

From Melquisedec Escobar: (1) ~~1.   Contracts, documents or agreements~~ related to any loans or business arrangements between (i) Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor; (2) Correspondence between (i) Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor;  and (3) Books or records of any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with ~~Abraham Klein, and the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor.~~ both (i) ~~Contracts, documents or agreements related to any loans or business arrangements between~~ Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor.

A-3026—A-3029.

From Joel Klein: (1) Documents related to any loans or business

arrangements between (i) Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor; (2) Correspondence between (i) Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor; and (3) Books or records of any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with both (i) Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor; Debtor.

A-3022—A-3025

From Phillip Gottehrer: (1) Documents related to any loans or business arrangements between (i)2. Correspondence between Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor; (2) Correspondence between (i) Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor; and (3) Books or records of any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor. both (i) Contracts, documents or agreements related to any loans or business arrangements between Abraham Klein or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with Abraham Klein, and (ii) the Debtor or any corporation, partnership, joint venture or other entity directly or indirectly owned by or affiliated with the Debtor.

A-3034—A-3037.

The November 10, 2011 Amended Orders directed the Appellants to commence the document production ordered therein on November 18, 2011.  A-3022—A-3041.

On November 14, 2011, the Bankruptcy Court held a hearing on the Appellants' Motion

for reconsideration, wherein the Bankruptcy Court set forth that in drafting the Amended Orders it had reviewed and reconsidered the Motion, but aside from restating and clarifying the document production as set forth in the Amended Orders, it failed to address the predicate legal issues and barriers set forth by Creditor Klein, or stay the document production pending a decision on the lack of subject matter jurisdiction issue, setting forth that,

> "THE COURT: …I read with care the papers that were submitted, and it seemed to me appropriate, based on the suggestion that the 2004 orders, very limited 2004 orders that I entered, seemed to require a certain kind of production, that it was not my intention to require issued orders that clarify and amend, perhaps correct, those orders. They do – conform them to what I intended…
>
> I remain satisfied that based on the entire record there is a basis for at least some preliminary documentary inquiry, and I've tried to provide a limited, and now clarified, template as to what should be produced, and to the extent that there is a need to go beyond, as there well may be, this very initial production of documents, and to the extent that the parties, that the trustee may seek oral examination, as opposed to just examination via the production of documents, you know, all those matters remain before me..."
>
> A-2845—A-2846.

At said hearing on November 14, 2011, counsel for the Appellants set forth on the record that,

> "MR LEWITTES:      The first question that any federal judge must confront is do I have subject matter jurisdiction, because if we look at 28 U.S.C. 1334(e)(1) a district court and via the automatic reference of this court, exclusive jurisdiction is give to the Court over property of the debtor at the time of the filing of the petition. We have set forth, and if the Court will permit -- give me a few minutes to set forth orally why this Court does not have a jurisdiction to hear this matter, the applications with respect to 2004, because we submit that we have made at least -- at least -- a prima facie showing that the debtor, there's no property interests, and therefore the trustee and the estate have no property interest in order to pursue a 2004. And we say that unless and until this Court adjudicates that issue as to whether or not this estate has any interests, whether legal or equitable, we cannot and we should not, and I think the law does not permit us to go farther.

There are several ground rules that we have to deal with and that is if, in fact, and I can demonstrate, and I believe we can, that the debtor's estate has no property interest in Caring then it doesn't matter whether the Court cites to, as it did, in its order granting, in part, 2004 examinations, it doesn't matter, because I don't disagree that Bankruptcy Code Section 704(a)(4) directs the trustee to investigate financial affairs of the debtor. that is based upon a shown fact that the estate has some property interest."

A-2848—A-2849.

Although the Bankruptcy Court set forth at said hearing that it took very seriously the issues raised by the Appellants concerning the Court's lack of subject matter jurisdiction, the Court did not stay the document production ordered by the Amended Orders.  A-2869.

On November 17, 2011, the Appellants filed respective Notices of Appeal with the Bankruptcy Court, appealing to this Court from the November 10, 2011 Amended Orders, and on November 18, 2011 brought an emergency Motion in front of this Court, seeking a stay of enforcement of the November 10, 2011 Amended Orders, which Motion was denied. (Persaud v. Pereira, U.S.D.C. Case No. 11-cv-5640).

## ARGUMENT

### POINT I

**THE BANKRUPTCY COURT LACKED SUBJECT MATTER JURISDICTION TO ENTERTAIN, LET ALONE GRANT, THE CHAPTER 7 TRUSTEE'S REQUESTS FOR BANKRUPTCY RULE 2004 DISCOVERY AS IT RELATED TO NON-ESTATE PROPERTY.**

Section 1334(e)(1) of the U.S. Code limits the Bankruptcy Court's jurisdiction to "all the property, wherever located, of the debtor **as of the commencement of such case**, and of property of the estate."  28 U.S.C. § 1334(e)(1) (emphasis added). Similarly, Bankruptcy Rule 2004 sets forth that, "The examination of an entity under this rule or of the debtor under § 343 of the Code **may relate only to the acts, conduct, or property or to the liabilities and financial condition of**

25

**the debtor**, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b) (emphasis added).

This District's Bankruptcy Court has set forth that Bankruptcy Rule 2004, "should only be used for the legitimate purpose of obtaining information relating to 'the acts, conduct, or property or to the liabilities and financial condition of the debtor or to any matter which may affect the administration of the debtor's right to a discharge.' The examination of a witness about matters having no relationship or no effect on the administration of an estate is improper." _In re_ Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991).  See also, _In re_ Hilsen, 2008 WL 2945996 (Bankr. S.D.N.Y. 2008) ("Rule 2004 may be used to discover information about estate property, but it is not a proper means to inquire with respect to non-estate property. The Application clearly targets only one item of missing property—Kiss # 6, and the Application recognizes that this sculpture is not property of the Debtor's estate. Indeed, the record demonstrates convincingly that the sculpture, whatever may have happened to it and wherever it presently may be located, rightfully belongs to Ms. Hilsen and has been her property exclusively for at least the last ten years. Accordingly, the requested discovery relating to a sculpture that is non-estate property is not authorized under Rule 2004.").

We respectfully ask this court to note that the Trustees Rule 2004 Motions set forth that their need for discovery is for, "his assessment of Caring and its business, the Trustee requires from Caring certain information related to, _inter alia_, the business operations and financial affairs of Caring, and the purported ownership interest in Caring asserted by Abraham Klein." A-2281; A-2298; A-2315; A-2332; and A-2349.

Irrespective of the Court's Order characterizing the documents specifically as those of Caring, or more generically as relating to entites in which Creditor Klein and the Debtor **had** any

interest in the past, the result is the same – the requirement of producing documents that relate to the business operations and financial affairs of Caring.

However we respectfully point out that the production of documentation that the Amended Orders require will not reasonably lead to information relating to the Debtor's estate's ownership interest in Caring, as the ownership rights are determined by the Arbitration Award and the law related to its validity and its preclusive effect.

Furthermore in light of the Trustees unambiguous statement that "the Trustee, on behalf of the bankruptcy estate, owns Caring,"  (See A-2281; A-2298; A-2315; A-2332; and A-2349),  there should not be any need to conduct discovery to establish the ownership of Caring, and accordingly the discovery seems to be solely, to assess the business operations and financial affairs of Caring.

 Although the Bankruptcy Court set forth in the Amended Orders dated November 10, 2011 being appealed from that, "the Trustee seeks to investigate the financial affairs of the Debtor and matters which may affect the administration of the Debtor's estate," (A-3022—A-3041), in fact, the Court ordered the Appellants to produce voluminous documents specifically relating to Caring, despite, on the one hand Creditor Klein's *prima facie* showing that the Debtor did not own or retain any ownership interests or rights in Caring at the time of her bankruptcy filing on May 26, 2010, and that there had not been any intervening event granting the Debtor an ownership interest in Caring, and on the other hand, the Trustee's inability to articulate, let alone demonstrate a valid basis for a claim of ownership let alone a basis for his factual conclusion that the Debtor's estate owns Caring.  (A-3022—A-3041).

In *In re* Lev, 2008 WL 207523 (Bankr. D.N.J. Jan. 23, 2008), a case involving quashing a Bankruptcy Rule 2004 subpoena, the court held that "The burden of proof to demonstrate a subpoena's undue burden lies with the objector to the subpoena. (citing Concord Boat Corp. v.

Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y.1996)… Once a motion to quash a subpoena is filed, the subpoena's issuer must show good cause for the Rule 2004 examination." See In re Eagle–Picher Indus ., Inc., 169 B.R. 130, 134 (Bankr.S.D.Ohio 1994).

Creditor Klein maintains that although the Trustee moved by order to show cause rather than by subpoena, the analysis is the same, and accordingly Creditor Klein's objections to the subpoena shifted the burden to the Trustee, a burden that the Trustee has not met.

Therefore, the Bankruptcy Court lacked subject matter jurisdiction to entertain, let alone grant, the Trustee's application for Bankruptcy Rule 2004 discovery relating to Caring, an entity that the Arbitration Award, even according to Debtor's own counsel, was granted to Creditor Klein.

### POINT II

**THE BANKRUPTCY COURT IMPROPERLY GRANTED THE CHAPTER 7 TRUSTEE'S APPLICATIONS FOR BANKRUPTCY RULE 2004 DISCOVERY RELATING TO CARING, DESPITE THE CLEAR LANGUAGE OF THE AWARD, AND DESPITE THE FACT THAT THE DEBTORS OWN COUNSEL UNDERSTOOD THAT THE ARBITRATION AWARD GRANTED CREDITOR KLEIN 100% AND TOTAL OWNERSHIP OF CARING.**

The subject Arbitrator's Award dated March 31, 2009 (the "Award"), which was judicially confirmed more than one year prior to the Debtor filing for bankruptcy protection, awarded one hundred percent of Caring to Creditor Klein, subject only to receiving the necessary governmental approvals to become its sole operator, setting forth that,

> "[Creditor] Klein has a 50% ownership interest in both Caring and Liberty in accordance with the terms of the Agreement, subject to the approvals of the agencies with jurisdiction, which interest in Liberty shall cease as soon as he, or his designee, is approved by the agencies with jurisdiction ***to be the sole operator of Caring***. […]
>
> If [Debtor Persaud] works at and for the benefit of Caring during the pendency of the license transfer, for and at the offices of Caring, for a minimum of 30 hours per week, she will be entitled to compensation of $1,000 per week and no more for any reason until the provisions of this

Award are fully complied with ***and thereafter she has no residual interest or rights in Caring***."

A-396; A-397 (emphasis added).

Although the award clearly sets forth that the Debtor has no residual interest or rights in Caring, in his application to the Bankruptcy Court for Rule 2004 discovery the Trustee through his proposed counsel clearly states that "the Trustee, on behalf of the bankruptcy estate, owns Caring." A-2281; A-2298; A-2315; A-2332; and A-2349.

The Trustee has failed to offer any support to his conclusory statement that the Trustee owns Caring, or point to the language in the Arbitration Award that supports his statement of fact.[5]

If there is any doubt about the clear meaning and intent of the award, the Arbitrator, in his findings of fact, which are part of the Award, sets forth that, "it is impossible for the parties to work together," and "it is appropriate to unwind the relationship of these parties in a matter that comports with the Public Health Law," further evidencing the meaning and holding of the Award. A-392—A-395.

It is not only Creditor Klein who understands that the Arbitration Award grants him 100% ownership of Caring, but Debtor's own counsel, set forth in various pleadings before and after the Debtor filed for Chapter 11 that the Award granted 100% and sole ownership of Caring to Creditor Klein, thus evidencing their understanding of the clear meaning of the Arbitration award, and that the Debtor does not have any interest in Caring.

"Furthermore, [the Arbitrator] held that should Ms. Persaud not comply with this award within 30 days, Klein's counsel would be appointed power of attorney to sign Ms. Persaud's name to such documents and applications to the Department of Health for the transfer of Caring's license to Mr. Klein without Ms. Persaud's signature."

---

[5] In the numerous pleadings relating to this matter the only cognizable explanation offered by the Trustee is his mistaken belief that the Appellate Division ruling has conferred certain ownership rights on the Debtor and/or the Trustee. Creditor Klein maintains that the Appellate Division ruling was rendered in violation of the automatic stay and that even if it were operative, Creditor Klein, at a minimum has an unconfirmed award which as a matter of law must be afforded preclusive effect.

Affirmation of Matthew Naparty dated April 29, 2009, submitted to the Kings County Court, p. 9.

"Furthermore, [the Arbitrator] ordered that Klein can attach all the receivables due to Caring and Liberty until the $2,172,607.58 is paid; that Klein has a 50% ownership in both Caring and Liberty, until he is approved by the agencies with jurisdiction **and then he would become the sole owner of Caring**; and that the whole of Caring and Liberty are security to Klein…"

Affirmation of Matthew Naparty dated May 4, 2009, submitted to the Kings County Court and the Appellate Division, Second Department, p. 10 (emphasis added).

"Furthermore, Mr. Neiman ordered that Klein can attach all the receivables due to Caring and another company owned by Ms. Persaud called Liberty until the $2,172,607.58 is paid; he ordered that Klein has a 50% ownership in both Caring and Liberty, until he is approved by the agencies with jurisdiction **and then he would become the sole owner of Caring**."

Debtor Persaud's Appellate Brief dated May 3, 2010, submitted to the Appellate Division, Second Department, p. 9 (emphasis added).

"In this case the arbitrator exceeded his power when, despite the express limitations contained in the purported agreement, the arbitrator awarded $2,172,607.58 **plus 100% ownership of Caring Home Care Agency** after Mr. Klein received all necessary State approvals."

Debtor Persaud's Appellate Brief dated May 3, 2010, submitted to the Appellate Division, Second Department, p. 29 (emphasis in original).

"**The arbitrator's award of over Two Million Dollars plus 100% ownership of Caring Home Care Agency** is in direct contradiction to the expressed limitations of damages set out in the purported agreement….Furthermore, aside from going beyond the contract to award Mr. Klein 100% ownership of Caring, he also awarded Klein $2,172,607.58 based on alleged other amounts given by Mr. Klein to Caring."

Debtor Persaud's Appellate Brief dated May 3, 2010, submitted to the Appellate Division, Second Department, p. 30 (emphasis added).

A-2374—A-2375.

For his part, the Trustee offered nothing more than unsubstantiated conclusions regarding

the Debtor's supposed ownership of Caring, without any basis in fact to support said statements,

using as his only support the erroneous argument that Creditor Klein's rights to Caring did not

stem from the Award itself, but from its confirmation, which he contends was vacated by the decision from the New York State Appellate Division dated May 10, 2011, which remanded the State Court action to the lower court for a new confirmation hearing.

Accordingly, in light of the plain meaning of the Arbitration Award and the Trustee's failure to demonstrate how the Debtor's estate has any interest in Caring, the Orders should be overturned.

## POINT III

### THE BANKRUPTCY COURT ERRED IN OVERLOOKING THE JUDICIAL ADMISSIONS OF DEBTOR PERSAUD'S COUNSEL THAT CARING BELONGS TO CREDITOR KLEIN.

As set forth above, Debtor Persaud's attorney's set forth in several pleadings and court appearances that the Arbitration Award conveyed 100% and sole ownership of Caring to Plaintiff Klein.  As the Court in In re Monahan Ford Corp. of Flushing, 390 B.R. 493 (Bankr. E.D.N.Y 2008) held that, "A judicial admission is a formal concession by a party or its counsel, in a pleading, brief, or stipulation and is binding on the party and the Court." Additionally the Courts have held that, "Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity bind his client as a judicial admission." In re Delafied 246 Corp., 2007 WL 2332527 (Bankr. S.D.N.Y. Aug. 14, 2007).

Moreover, courts have held that judicial admissions "may not be controverted at trial or on appeal.  Indeed, they are 'not evidence at all but rather have the effect of withdrawing a fact from contention.'' Maurizio v. Goldsmith, 84 F. Supp. 2d 455, 464 (S.D.N.Y.), aff'd, 230 F.3d 518 (2d Cir. 2000); accord Wheeler v. Citizens Telecommunications Co., 795 N.Y.S.2d 370, 372 (3d Dep't 2005) ("Formal judicial admissions take the place of evidence and are concessions, for the purpose

31

of the litigation, of the truth of a fact alleged by an adversary.") (citation omitted); cf. D&L

Holdings, LLC v. RCG Goldman Co., 287 A.D.2d 65, 72, 734 N.Y.S.2d 25, 31 (1st Dep't 2001),

leave to appeal denied, 97 N.Y.2d 611, 742 N.Y.S.2d 604 (2002) ("It is of no moment that the

remarks were made by counsel rather than [another party] representative.").

    Accordingly, the judicial admissions made by Debtor Persaud's counsel are binding upon

her, and therefore the Bankruptcy Court erred in granting the Trustee's discovery request regarding

non-estate property.

## POINT IV

### THE BANKRUPTCY COURT ERRED BY FAILING TO RECOGNIZE THE BINDING EFFECT OF THE ARBITRATION AWARD EVEN IF THE AWARD IS CURRENTLY UNCONFIRMED AND *A FORTIORI* IF THE ARBITRATION AWARD IS CURRENTLY A CONFIRMED AWARD.

    It is uncontroverted that the Award was judicially confirmed by the New York State

Supreme Court for Kings County on April 17, 2009, and remained so up until the Debtor's

bankruptcy filing on May 26, 2010.  Accordingly, Creditor Klein maintains that the Appellate

Division decision vacating the confirmation is a nullity as it was rendered in violation of the

automatic stay. Creditor Klein made a Motion in front of the Bankruptcy Court on September 9,

2011 to vacate same, which Motion has been neither heard nor calendared, let alone ruled upon, by

the Bankruptcy Court. A-3042—A-3107.

    Moreover, even if the Bankruptcy Court finds that the State Appellate Court's decision is

operative and the Award would indeed be subject to a new confirmation hearing, the Trustee's

argument would still fail insofar as the parties are collaterally estopped from re-litigating the issues

decided by the Award, which was based on the Arbitrator hearing the merits of the case based on

both Creditor Klein's testimony and exhibits and as such constitutes a final determination of the

dispute between the Debtor and Creditor Klein concerning Caring, and is thus subject to the doctrines of *res judicata* and collateral estoppel according to New York law.

New York State Appellate Division First, Second and Third Department precedents have held that "an arbitration award, even one never confirmed, may serve as the basis for the defense of collateral estoppel in a subsequent action."  Acevedo v. Holton, 239 A.D.2d 194, 195, 657 N.Y.S.2d 407, 409 (1st Dep't 1997); see, Hibbert v. Avwontom, 35 A.D.3d 813, 814, 826 N.Y.S.2d 441, 442 (2d Dep't 2006); County of Rockland v. Aetna Casualty & Surety Co., 129 A.D.2d 606, 514 N.Y.S.2d 102, 103 (2d Dep't 1987); Hilowitz v. Hilowitz, 85 A.D.2d 621, 444 N.Y.S.2d 948, 949 (2d Dep't 1981) ("Plaintiff's contention that only a judicially confirmed arbitration award may form the basis for the defenses of res judicata and collateral estoppel is without merit. Judicial confirmation may be the recommended practice (see CPLR 7510; Siegel, New York Practice, § 601, p. 860), but the doctrines are applicable to issues resolved by arbitration where there has been a final determination on the merits (see Kilduff v. Donna Oil Corp., 74 A.D.2d 562, 424 N.Y.S.2d 282), notwithstanding a lack of confirmation of the award); McMenemy v. Goord, 273 A.D.2d 665, 667, 709 N.Y.S.2d 683, 685 (3d Dep't 2000) ("Notably, the unconfirmed status of the arbitrator's decision does not preclude its collateral estoppel effect (*see, County of Rockland v. Aetna Cas. & Sur. Co.,* 129 A.D.2d 606, 607, 514 N.Y.S.2d 102, *lv. denied* 70 N.Y.2d 603, 518 N.Y.S.2d 1026, 512 N.E.2d 552; *Ecker v. Lerner,* 123 A.D.2d 661, 507 N.Y.S.2d 31; *Hilowitz v. Hilowitz,* 85 A.D.2d 621, 444 N.Y.S.2d 948).");  ("An arbitration award is res judicata on a subsequent claim for arbitration notwithstanding that the award was never confirmed.") *Hilowitz v. Hilowitz,* 85 A.D.2d 621, 444 N.Y.S.2d 948; White v. State, 615 N.Y.S.2d 811, 814-815, 161 Misc.2d 938, 942-943 (N.Y.Ct.Cl. 1994).

According to the Second Circuit's decision in Jacobson v. Fireman's Fund Insurance

Company, 111 F.3d 261 (2d Cir. 1997), the Bankruptcy Court must look to New York law when reaching a determination on the validity and of the Award.  In Jacobson, the Court cites to Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 104 S.Ct. 892, 896 (1984), for the proposition that, "A federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," and then applies Warren City School Dist. Bd. Of Educ. for the proposition that, "Because the umpire's awards against Jacobson were rendered in the context of a New York state action, 'the preclusive effect in federal court of [those] state court judgment[s] is determined by [New York] law,' and our analysis is therefore governed by New York's 'transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'" Id. at 265.

Accordingly, the State Appellate Court's decision vacating the Award's confirmation does not alter the fact that when the Debtor filed for bankruptcy protection on May 26, 2010, she neither owned, nor retained an ownership interest in Caring; that whether the Award is confirmed or not, it cannot be attacked; and that the Trustee has no interest in Caring.  Therefore, the Bankruptcy Court lacked subject matter jurisdiction to entertain, let alone grant, the Trustee's applications for Bankruptcy Rule 2004 examinations and document productions to the extent they relate to Caring, and the November 10, 2011 Amended Orders should be vacated in their entirety.

## **CONCLUSION**

For the foregoing reasons, the Appellants respectfully request that the Court vacate in their entirety the Bankruptcy Court's Amended Orders dated November 10, 2011, together with such other and further relief that the Court deems just and proper.

Dated: Brooklyn, New York.
      January 26, 2012

                        MENDEL ZILBERBERG & ASSOCIATES, P.C.
                        *Attorneys for the Appellants*

                    By:      s/ Mendel Zilberberg_____
                            Mendel Zilberberg (MZ-6625)
                            Joel Lewittes (JL-6576), *of counsel*
                            6619 Thirteenth Avenue
                            Brooklyn, New York 11219
                            Telephone (718) 256-2000
                            Facsimile (718) 256-7900
                            Email: mz@amalgamail.com